**STATE OF VERMONT**
**SUPERIOR COURT : BENNINGTON UNIT**
**- CIVIL DIVISION -**

FILED
JUN - 1 2026
VERMONT SUPERIOR COURT
BENNINGTON UNIT

SAMANTHA GROUT,

Plaintiff,

vs.

WELLS FARGO BANK, N.A.,
B.G. LENDERS SERVICE, LLC,
JOHN DOE 1, JOHN DOE 2, JOHN DOE 3 &
JOHN DOE 4,

Defendants.

**CASE NO.: 26 CV 03094**
Honorable John W. Valente, VSCJ

# 1ST AMENDED VERIFIED COMPLAINT & JURY DEMAND

**NOW COME** Plaintiff, Samantha Grout, residing in Arlington, Vermont, appearing *Pro Se*, and brings this action against Defendants Wells Fargo Bank, N.A. ("Wells Fargo"), B.G. Lenders Service, LLC ("BG"), John Doe 1, John Doe 2, John Doe 3 & John Doe 4, as follows:

This 1st Amended Verified Complaint is filed as of right pursuant to Vermont Rules of Civil Procedure R.15(a), supersedes the original Verified Complaint. The 1st Amended Complaint : adds defendant John Doe 4 a resident of the State of Vermont, as a named defendant; adds additional Causes of Actions; incorporates the facts set forth in the Supplemental Affidavit and Declaration and corrects typographical and like non substantive oversights. The factual allegations have not changed, but have been cleaned up and supplemented. The Causes of Action clarified and expended upon.

## NATURE OF THE ACTION

1. This civil action arises from defendants coordinated, repeated, extrajudicial course of physical trespass, electronic intrusion and unlawful debt collection conduct executed across multiple dates within the borders of the State of Vermont, Bennington County.

2. Plaintiff seeks actual, statutory, exemplary and compensatory damages and injunctive relief for violations of the Vermont Consumer Protection Act (9 V.S.A. § 2453), common-law trespass to land, intentional invasion of privacy, intrusion upon seclusion), *per se* breaches of the peace under the Uniform Commercial Code (9A V.S.A. § 9-609), believed illegal electronic surveillance (to be determined in the course of discovery), intentional and negligent inflictions of emotional distress and negligent hiring and retention.

## I. PARTIES

3. Plaintiff Samantha Grout is a natural person residing at a rural residential homestead in Arlington, Bennington County, Vermont ("Plaintiff").

4. Defendant Wells Fargo Bank, N.A. is a national banking association with a principal corporate address of : 101 North Phillips Avenue, Sioux Falls, South Dakota 57104, engaged in consumer auto-financing and home mortgage transactions throughout Vermont ("Wells Fargo"). Wells Fargo is named in all capacities.

5. Defendant B.G. Lenders Service, LLC is a limited liability company organized under the laws of the State of New York, with a principal place of business in Kingston, New York and an operational dispatch address at 31 Lower Warren Street, Glens Falls, New York 12801 ("BG"). BG is named in its individual and representative capacities.

6 BG holds no Certificate of Authority to conduct business within the State of Vermont and maintains no local registered agent for service of process.

6a. Upon information and belief, BG holds no Private Investigator licensing or certifications from the State of Vermont.

6b. Upon information and belief BG is unauthorized and lacks FMCS certification to engage interstate business from New York to Vermont.

7. Defendant John Doe 1 is an individual who acted at all relevant times as a field agent of BG, dispatched to Plaintiff's property on May 14, 2026. John Doe 1's identity and domicile is presently unknown to Plaintiff but is anticipated to be ascertained through discovery, including subpoena of BG's dispatch records. Plaintiff will seek leave to amend the caption and to substitute John Doe 1's true name upon identification. John Doe 1 is named in both his representative and individual capacities herein.

8. Defendant John Doe 2 is an individual who acted at all relevant times as a field agent of BG and Wells, dispatched to Plaintiff's property on May 26, 2026. John Doe 2's true identity is documented within **Vermont State Police Incident/Citation No. 26B3002828**. Plaintiff will seek leave to amend the caption and to substitute John Doe 2's true name upon receipt of the police report. John Doe 1 is named in both his representative and individual capacities herein.

9. Defendant John Doe 3 is an individual who acted at all relevant times as a field agent of BG and Wells, dispatched to Plaintiff's property on May 26, 2026. John Doe 3's true identity is documented within **Vermont State Police Incident/Citation No. 26B3002828**. Plaintiff will seek leave to amend the caption and to substitute John Doe 3's true name upon receipt of the police report. John Doe 1 is named in both his representative and individual capacities herein.

10. Defendant John Doe 4 is an individual who acted at all relevant times as a field agent of BG and Wells. John Doe 4's true identity is unknown to Plaintiff, but who is specifically identified as the primary physical operator, driver and custodial of the black Chevrolet Tahoe bearing the Vermont License Plate and corresponding Veermont registeeration "KYD-502", which is equipped with specialized mobile data mining equipment.

10a. Upon information and belief, at all times relevant to the within Action, John Doe 4 (the "ALPR Driver" or "John Doe 4") conducted his physical operations exclusively within the State of Vermont, is a resident of the State of Vermont, Bennington County and believed Manchester or Sunderland townships

10b. The APLR Driver acted as a field agent, subcontractor or operational agent of BG or Wells transmitting all the mined : car, license plate, registration and owners telemetric and realtime GPS data to BG and/or Wells Fargo. Plaintiff will seek leave to amend the caption and to substitute John Doe 4's true name upon receipt of the same. John Doe 4 is named in his individual and representative capacities.

## II. JURISDICTION & VENUE

**11.** Jurisdiction is proper in this Court pursuant to 4 V.S.A. § 31a, as the matter in controversy exceeds the statutory threshold and all injuries occurred within Bennington County, Vermont.

**12.** Venue is proper in the Bennington Unit pursuant to 12 V.S.A. § 402(a), as the real property, subject vehicle and all operative tortious acts are located and occurred in Arlington, Vermont.

## III. STATEMENT OF FACTS

### A. VT Corporate Registration Status & USDOT Regulatory Record of BG - Wells Fargo's Negligence & Lack of Due Dilligance

**13.** Defendant BG is a limited liability company organized under the laws of the State of New York.

14. As documented by the Vermont Secretary of State's records (**Exhibit** 2), BG has not obtained a Certificate of Authority to transact business in Vermont as required by 11 V.S.A. § 4112, and does not maintain a registered agent with a Vermont address as required by § 4113.

15. BG advertises and regularly conducts business in the State of Vermont including repossession and private investigatory services to and for regional and national banks and credit unions.

16. BG is engaging in systematic and ongoing interstate commercial business operations in Vermont while operating outside Vermont's regulatory framework (**Exhibit** 2);

17. BG is conducting, offering and performing Private Investigatory services ("PI") in Vermont absent Vermont licensure thus operating outside Vermont's regulatory framework (**Exhibit** 14);

18. BG's lack of registration, licensure and ongoing business activities in Vermont relevant herein bears directly on Wells Fargo's negligent discharge of its obligatory vendor verification process and due diligence, then as now, as systematically patterned and documented in its 2022 CPB Consent Judgment (**Exhibit**___).

19. Notably no private cause of action stems from BG's lack of registration, licensure in Vermont but rather bears on the unconscionability analysis under the VCPA — not as a standalone basis for tort liability.

**20.** Notwithstanding its unregistered status, BG actively markets its asset recovery services to national lenders, including Wells Fargo, as including a physical operational presence in Vermont's '802' regional marketplace (**Exhibit** 1).

21. The gap between that marketing representation and BG's actual regulatory standing in Vermont is relevant to Plaintiff's deceptive practices claims.

**22.** Now comes Vermont's PI licensing statute, 26 V.S.A. § 3151(3) that defines a "private investigator" to include any person who, for consideration, investigates the identity, movements, whereabouts, or character of any person or the location, disposition, or recovery of property.

BG's and John Does 1-4 field operations — in dispatching scouts to surveil a homestead, initiate a skip trace on Plaintiff, photograph Plaintiff's personal assets, while trespassing into Plaintiff's curtilage, running LPR tracking loops and tracking Plaintiff in Bennington County, Arlington falls within that statutory language, regardless of alleged underlying predicate basis. **Exhibits 14, 15**

23. No enumerated exemption under 26 V.S.A. § 3151a applies to:

A. BG as it is itself a commercial recovery and surveillance agency and cannot claim the single-employer exemption (**Exhibit** 14), and

B. Upon information and belief the ALPR Driver is a commercial recovery and surveillance agency and cannot claim the single-employer exemption (**Exhibit** 15).

Plaintiff raises this as a colorable factor in the VCPA unconscionability analysis, acknowledging that no Vermont Appellate decision has definitively resolved this question and may well serve as a case of 1st impression for the Court.

**24.** BG is a federally registered interstate commercial motor carrier under USDOT Numbers 1304679 and MC-862181.

25. According to FMCSA SAFER data as of May 26, 2026, BG's vehicle out-of-service rate is 60% — almost 3x the national average of 22.26% — based on 3 of 5 inspected vehicles placed out of service. Of 10 driver inspections, 1 driver was placed out of service (10%, vs. 6.67% national average).

26. Despite operating – an unrated interstate fleet — absent formal FMCSA safety rating, for over two decades, BG has never received a formal FMCSA safety rating.

27. Plaintiff asks the Court to respectfully take Judicial Notice of this data under V.R.E. 201. **Exhibit 3**

28. As of May 26, 2026, upon information and belief, BG's USDOT and its operating authority is NOT AUTHORIZED for Interstate "for hire" service *i.e.* NY to VT. *Id.*

29. Wells Fargo's assignment of recovery work to BG occurred while BG was in violation of USDOT promulgations and regulations.

30. BG's non-compliant status with USDOT FMCSA requirements and interstate commercial for hire operations at the time Wells Fargo assignment of recovery operations against Plaintiff to BG are independently relevant to Wells Fargo's vendor due diligence obligations.

31. BG's non-compliant status with Vermont Corporate Registration requirements and Secretary of State promulgations at the time Wells Fargo assigned recovery operations against Plaintiff to BG are independently relevant to Wells Fargo's vendor due diligence obligations.

32. BG's non-compliant status with Vermont Private Investigator licensure requirements at the time Wells Fargo assigned recovery operations against Plaintiff to BG and the ALPR Driver are independently relevant to Wells Fargo's vendor due diligence obligations.

32a. Wells Fargo was and remains grossly negligent for its failures to have properly vetted BG.

**B. Prior Litigation Record of BG - Wells Fargo's Negligence and Lack of Due <u>Dilligance</u>**

**33.** On January 7, 2026, plaintiff Buffy Owens filed a consumer credit complaint against B.G. Lenders Service, LLC in the United States District Court for the Northern District of New York, captioned *Owens v. B.G. Lenders Service, LLC et al.*, No. 1:26-cv-00033 (N.D.N.Y.), classified as Finance and Lending — Consumer Credit, currently pending before the Honorable Anthony J. Brindisi, USDJ and Paul J. Evangelista, USMJ. The full allegations of that complaint will be obtained through discovery. **Exhibit 4** (exhibit awaiting PACER approval)

34. Its existence and pendency at the time Wells Fargo assigned BG to conduct recovery operations against Plaintiff is independently relevant to Wells Fargo's vendor due diligence obligations, regardless of the specific theories pleaded therein. Wells Fargo's assignment of recovery work to BG occurred while BG was an active defendant in a Federal consumer credit action filed five (5) months earlier. Wells Fargo was negligent in its retention of BG.

34a. Upon information and belief, BG secreted this from Wells Fargo.

34b. Wells Fargo was and remains grossly negligent for its failures to have properly vetted BG.

34c. Conversely, Well Fargo was wanton not to have suspended BG upon receipt or disclosure of the USDC NDNY action

**35.** On February 11, 2026, BG filed suit in New York Supreme Court, Washington County, captioned *BG Lenders Service, LLC v. Jeremiah Gifford et al.*, No. EC2026-41709, alleging a former field agent misappropriated BG's confidential client lists and lender relationships. This litigation confirms that BG's field agents, subcontractors and assigns operate

under direct BG's control and non-compete agreements — reinforcing foundations of *respondeat superior*

36. BG is liable for the actions of John Does 1-4

36a. BG maintains proprietary lender client lists identifying Wells Fargo as a client.

37. Regardless of contractual indemnification agreements between the defendants, Wells Fargo is liable for the actions of BG and John Does 1-4.

## C. **<u>Wells Fargo's Three-Year Communications Silence and Notice Failures</u>**

**38.** For thirty-six (36) months spanning from 2023 through May 14, 2026, Defendant Wells Fargo maintained Plaintiff's auto-finance account in a purported default or collection status without issuing any written Notice of Acceleration, written demand for payment or written warning of intent to repossess to Plaintiff.

39. The applicable pre-repossession notice obligations arise from the express cure and acceleration provisions of the underlying loan agreement, to be obtained in discovery, from the implied covenant of good faith and fair dealing and applicable codifications.

39a. The three-year absence of communication is relevant to the breach-of-peace and unconscionability analyses and as to whether Wells Fargo's conduct was commercially reasonable.

40. Defendant Wells Fargo possessed actual institutional notice of its systemic, on going, repeated non-compliance within its asset-recovery chains. See the attached:

> 1) the December 2022 CFPB $3,700,000,000 Consent Order (*In re Wells Fargo Bank, N.A.*, Docket No. 2022-CFPB-0011, **(Exhibit** 6);
>
> 2) December 28, 2018 <u>50-State AG $1,500,000 Settlement</u> ($575 million auto based **Exhibit** 7, including Vermont AG participation and Vermont's $1.98 million share, covering force-placed auto insurance and wrongful repossession practices); and

3) DOJ/SCRA Consent Order (*United States v. Wells Fargo Bank, N.A.*, No. 2:16-cv-07236, C.D. Cal., **Exhibit** 8, covering $10.1 million in remediation for unauthorized self-help vehicle repossessions of servicemembers plus a separate $20 million OCC civil penalty).

41. These records establish Wells Fargo's prior notice, institutional knowledge and punitive damages analysis. Plaintiff requests Judicial Notice of the Orders and Settlements under V.R.E. 201.

**D. May 14, 2026 — Curtilage Trespass and Driveway Blockade (John Doe 1)**

**42.** Plaintiff's residential property in Arlington is explicitly posted with Vermont-compliant 'No Trespassing' signs along its boundaries, as photographed in **Exhibit** 9

43. On May 14, 2026, Defendant John Doe 1 arrived at Plaintiff's property in a flat bed commercial vehicle and positioned it to completely block the private driveway, obstructing ingress and egress.

44. He drove up the driveway, then backed down to the lower neighbors driveway.

45. While in the neighbors driveway he was witnessed holding up what appeared to be an IPad or like tablet facing the neighbors property and assumedly took photographs thereof.

46. He then drove back up the driveway. Parked. Exited the vehicle, however John Doe 1 did not proceed to the front door; rather he advanced a further twenty (20) yards to the south of the main curtilage area into another protected curtilage to a position overlooking and affording a direct vantage point onto a neighboring private property. From this position, John Doe 1 accessed, photographed and documented that neighboring parcel — including its residential structures, outbuildings and personal property – as well as Plaintiff's property located behind an ancillary structure — without authorization from Plaintiff, authorization from that neighboring property owner or any nexus to any debt or security interest held by Wells Fargo.

47. John Doe 1 then crossed the driveway and advanced approximately fifty (50) yards to the north west beyond the established driveway into yet another area of the protected curtilage — private field and logging roads — well beyond any implied license to approach a residence.

48. While in this area of curtilage, John Doe 1 again used a mobile data terminal to conduct a systematic photographic inventory of personal assets unrelated to any alleged security interest held by Wells Fargo, specifically: the residential structures and entryways; a Ford Expedition; a Subaru, a commercial excavator; a tractor; a Polaris RZR side-by-side; a chicken coop structure; an ancillary structure and two utility trailers with tools and equipment. This photographic inventory is documented in Ring surveillance stills and video **Exhibit 10**.

49. Such inventorying of Plaintiff's assets beyond the alleged collateral constitutes harassment and an invasion of Plaintiff's privacy.

50. As recognized in *Florida v. Jardines*, 569 U.S. 1, 8 (2013) (as a point of reference and persuasive herein) the Supreme Court stated that, in a civil trespass context, the implied license to approach a home extends only to proceeding to the front door by the customary route for a customary purpose.

51. Curtilage is "part of the home itself" entitled to full legal protection. John Doe 1's advance into the fields exceeded that license entirely and trespassed.

52. This unauthorized reconnaissance compounded by surveillance of a second private parcel demonstrates a broader pattern of extrajudicial surveillance extending well beyond the scope of any lawful self-help recovery operation.

53. Such inventorying of Plaintiff's assets, and those of a neighbor, beyond the alleged collateral constitutes unmitigated harassment, intimidation and invasion of Plaintiff's privacy.

53a. Upon information and belief John Doe 1 is not a licensed private investigator in the State of Vermont.

54. The actions John Doe 1 constitute the actions of a private investigator.

55. These trespasses and violations are *per se* breaches of the peace and extinguished Wells Fargo's, and BG, right to self help recovery pursuant to Vermont's CPA.

**E. <u>May 15, 2026 — Midnight Surveillance Activity</u>**

**56.** On or about May 15, 2026, at approximately 12:30am, upon information and belief, a vehicle operating on behalf of defendants BG and Wells Fargo made surveillance passes in the immediate vicinity of Plaintiffs property. The vehicle drove across an adjoining neighbor's agricultural field, leaving visible tire impressions across cultivated farm meadow attempting to circumnavigate Plaintiff's posted logging roads, as there was access through the neighbor's property up and until a tree fell this winter and blocked that NW corner roadway access point. (**Exhibit** 5).

57. To the extent those passes traversed Plaintiffs property or curtilage, they constitute additional trespass.

58. To the extent they occurred on adjacent private unposted property, they form part of the defendants' pattern supporting Plaintiffs surveillance, privacy and VCPA claims.

59. Of note upon information and belief, defendant BG operates a black 4 door late model SUV Tahoe, with blacked out windows and ALPR technology for the scanning, cataloging and documenting of residents of Bennington County in Arlington, Manchester and

Bennington, regardless of such 3rd parties residents' legal status. This is skip tracing technology used by private investigative services and law enforcement, but notably not in Vermont by either the State Police or Bennington Co. Sheriff. **Exhibit** 15

F. **May 16, 2026 — Remote Telematics Access**

**60.** On May 16, 2026, at approximately 11:47am, while Plaintiff's 2023 Ford F-350 was stationary on a private logging road within Plaintiff's real property, the occupant observed the central infotainment console unexpectedly activate and display prompts indicating that an external source was remotely accessing vehicle telematics and location data "DATA COLLECTION ACTIVE". Plaintiff alleges that Wells Fargo, or its agents through affiliated platforms such as iRepo, Clearplan or RDN coordinated this remote access without Plaintiff's contemporaneous knowledge or consent.

61. To the extent the access involved interception of electronic communication contents rather than mere location data, Plaintiff alternatively preserves statutory claims under 13 V.S.A. § 4601 *et seq*.

**G. Interim Gate Chain Cutting**

**62.** During the interval between May 14 and May 26, 2026, upon information and belief, an asset-recovery agent operating under the direction of defendants arrived at Plaintiff's property line and cut a locked steel gate chain securing the entrance to Plaintiff's property. While Plaintiff does not possess video of the precise moment of severance, the structural breach occurred during this period.

63. Following the breach, Plaintiff reinstalled and installed new and further chains and legally compliant 'No Trespassing' signage — bearing the lawful owner's name, address,

phone number and current dates — across all unpaved logging roads and dirt pathways on the property perimeter, with the exception of the primary driveway entrance (**Exhibits** 9).

**H. May 26, 2026 — Double-Gate Trespass, Law Enforcement Intervention, Electronic Surveillance & Third-Party Disclosures (John Doe 2 and John Doe 3)**

**64.** Notwithstanding defendants' extinguished and thus loss of right to "self help" recovery as of May 14, on May 26, 2026 between approximately 8:30pm and 9:00pm, defendants John Doe 2 and 3 arrived at Plaintiff's property in a white commercial flatbed tow vehicle (**Exhibit** 12), operating as field agents of BG.

65. Upon entry, John Doe 2 demanded verbal disclosure of the location of the subject vehicle.

**66.** During this encounter, Defendants' agents explicitly threatened the vehicle owner with compounding financial losses of "$750" for every subsequent visit they made to the property.

67. Such statement is a violation of the Vermont's Consumer Protection Act ("CPA").

68. During this encounter, Defendants' agents expressly threatened the vehicle owner that the "police" would be coming ... alluding to a threat of Plaintiff's (albeit non-existent) criminal conduct.

69. Such a threat is nothing short of extortion.

70. Such statement a violation of the CPA.

71. These – video recorded — threats were deployed to coerce, harass and intimidate Plaintiff and facilitate asset surrender.

72. John Does 2 & 3, when video was reviewed, both before the interaction and subsequent to it, conducted a comprehensive photographic mapping operation of high-value assets within the private curtilage, including the residential structures and entryways; a Ford

Expedition; a commercial excavator; a Polaris RZR; a chicken coop and two utility trailers, and not limited thereto — the near identical set of assets photographed by John Doe 1 on May 14.

73. John Does 2 & 3 cataloguing of Plaintiff's curtilage and asserts the conduct of private investigators.

74. Upon information and belief neither John Des 1 nor 2 are licensed private investigators in the State of Vermont.

75. Then John Does 2 and 3 departed, but parked in the driveway of and subsequently disclosed details of the alleged consumer debt and active repossession operation to Scott Pike and other neighboring residents on Hillside Rd – without Plaintiff's consent, in a deliberate effort to apply coercive social pressure to the household.

76. Such conduct is in direct violation of Vermont's privacy laws, VCPA.

77. Following these interactions, John Doe 2 and 3 proceeded to walk up a private logging road owned and maintained by Plaintiff, bypassing and crossing no fewer than two (2) separate, closed and locked security gates explicitly posted with compliant 'No Trespassing' signage bearing current dates, owner contact information, and clear boundary-exclusion language. **Exhibit 5**

78. When on the logging road beyond the 1st chained "No Trespassing" sign they were confronted for their trespass and advised that the Vermont State Police were en route, John Doe 3 falsely asserted that the Vt State Police knew of their presence and authorized their trespass. Such confrontation and false statements were electronically recorded.

79. When on the logging road beyond the 1st chained "No Trespassing" sign they were confronted for their trespass and advised that "the Bank" ie Wells Fargo authorized their trespass. Such confrontation and false statements were electronically recorded.

80. Vt State Police Troopers arrived on scene. They verified and confirmed, as recorded on their body cameras:

1) no extrajudicial authorization exists under Vermont law to bypass posted boundaries;
2) Police authority had not been given to trespass;
3) they were unaware until Plaintiff's call of John Does 2-3 being on the property;
4) confirmed the property was legally posted, and
5) ordered John Doe 2 and John Doe 3 not to return under threat of arrest.

80a. On scene, John Doe 2 and John Doe 3 **admitted** to the responding Troopers that they had: i) intentionally entered the land, ii) saw the "No Trespassing" signs and iii) crossed through multiple closed, posted, gates.

81. Defendants affirmative, voluntary, admissions to law enforcement equates not but criminally actionable conduct but as relevant herein - breaches of the peace.

82. The responding Troopers issued **Vermont State Police Incident/Citation No. 26B3002828** to John Doe 2 and 3, ordering them under threat of arrest never to return to the property. The true names of John Doe 2 and John Doe 3 are recorded within this official police report and upon receipt of the same the Complaint amended with leave accordingly.

82a. Upon information and belief, one or both of Defendants' agents — John Doe 2 and 3 — deliberately and falsely instigated a roadside sobriety investigation with the responding Vermont State Police Troopers. This was done knowingly, without factual basis, and for the deliberate purpose of: deflecting law enforcement scrutiny from defendants' own criminal trespass conduct; manufacturing a basis to undermine Plaintiff's credibility as the complaining property owner; and retaliating against Plaintiff for calling law enforcement and reporting the trespass.

82b. Plaintiff's partner was subjected to Standardized Field Sobriety Tests ("SFSTs") administered by Vermont State Police Troopers at the scene under conditions of intense

confrontational stress and acute physiological adrenaline response caused directly by defendants' agents' unlawful conduct on Plaintiff's property.

82c. Plaintiff's partner successfully completed and passed every Standardized Field Sobriety Test administered by the responding Vermont State Police Troopers, confirming total sobriety. This outcome — Plaintiff's partner's complete sobriety — is documented on Vermont State Police Trooper body camera footage associated with Vermont State Police Incident/Citation No. 26B3002828.

81d. The confirmed results of the field sobriety tests, documented on official law enforcement body camera footage, establish that the instigation of the sobriety investigation was knowingly false. Defendants' agents knew or reasonably should have known that no legitimate basis for a sobriety investigation existed. The instigation was without any factual predicate and was designed exclusively to discredit, humiliate, and intimidate Plaintiff at the moment she was exercising her lawful right to report criminal trespass against her own property. This constitutes an independent act of malice and abuse of the legal process directed personally at Plaintiff.

**83.** For a 2nd time defendants extinguished their right to self help recovery

I. **May 26, 2026 — Electronic Key FOB Signal Interception**

**84.** Separate and distinct from the trespassers and above complained of conduct on May 26, at approximately 845pm, when John Doe 2 and 3 advanced to the primary entrance threshold of the residential home, both individuals were observed and on video holding active electronic hardware units.

**85.** Upon information and belief, these devices comprised a synchronized signal amplifier and repeater operating together as a two-component array. Plaintiff alleges, upon information and belief, that this equipment was deployed to intercept and record the Radio

Frequency (RF) rolling-code signals emanating from Plaintiff's personal key fobs and vehicle entry controllers located within the interior of the home.

**86.** During this operation, the subject vehicle located on the property was observed flashing its exterior lights, no less than 2 times 15 seconds apart, and cycling its door locks — behavior consistent with a remote telemetric connection verifying the vehicle's location *via* a captured RF code.

**87.** Plaintiff acknowledges this claim is pleaded on information and belief based on observed device behavior and the vehicle's response. The specific technical capability of the devices will be established through expert analysis and discovery. Plaintiff preserves claims, while not raised herein, and 13 V.S.A. § 4601 *et seq.* for the non-consensual interception of electronic signals from within a private dwelling, to be developed as discovery proceeds.

J. **ALPR SURVEILLANCE – JOHN DOE 4 MAY 28, 2026**

88. As explicitly demonstrated by the photographic evidence captured attached hereto as **Exhibits** 15, and identified in paragraph 10 and in the Original Verified Complaint, this vehicle is structurally configured as a specialized, bulk-surveillance rig outfitted with dual-angled, high-speed infrared Automatic License Plate Reader (ALPR) cameras mounted directly to the roof rack. The Exhibits capture the rear profile of the vehicle, confirming the Vermont registration KYD 502 and the roof-mounted tracking arrays. The Exhibits captures the front profile confirming the Vermont registration KYD 502 and 2 camera arrays. The **Exhibits** documents the vehicle positioned in the public square at a local service station, actively scanning local residents to map pattern-of-life transit data.

89. The physical and digital surveillance captured in Exhibits was executed after the corporate defendants and the ALPR Driver had actual and implied knowledge of the law enforcement stay-away of May 26.

90. This vehicle was positioned approximately ½-¾ miles away at Stewarts in Arlington from Plaintiff's domicile.

91. Defendants' continuous, nocturnal and diurnal deployment of this specialized data-mining vehicle directly targeting Plaintiff's household and immediate neighbors, crossing the line from routine commercial asset recovery into an intentional, malicious campaign of physical intimidation, technological harassment and civil stalking.

92. Upon information and belief John Doe 4 is not a licensed private investigator in the State of Vermont.

92a. Following Vermont State Police Incident/Citation No. 26B3002828 on May 26, 2026, Plaintiff received no communication from Wells Fargo, B.G. or any representative of either entity indicating that the asset recovery assignment directed at Plaintiff's property or vehicle had been terminated, suspended, or placed on hold. No letter, telephone call, email, text message, or other communication of any kind was received.

92b. Upon information and belief, based on Plaintiff's familiarity with commercial asset recovery operations through her eighteen years of litigation experience, BG's field agents generate written field activity reports following each recovery attempt, documenting the outcome of every field operation — including any law enforcement intervention, citations issued, and on-scene admissions made by agents. Such reports are transmitted to BG's dispatch and management promptly following each operation, and communicated to the assigning lender through the shared recovery platform — including the RDN platform through which Wells Fargo

assigned and monitored this recovery operation in real time. The field activity reports from the May 26, 2026 events would have documented in full: the Vermont State Police intervention; the issuance of Incident/Citation No. 26B3002828; the on-scene admissions of trespass by BG's agents to responding Troopers; and the formal citation ordering BG's agents never to return under penalty of arrest.

92c. Upon information and belief, Wells Fargo's asset recovery team received actual notice of the Vermont State Police citation, the on-scene trespass admissions, and the complete circumstances of the May 26 law enforcement intervention through BG's written field reports and the shared recovery platform by no later than May 27, 2026 — within 24 hours of the events.

92d. Notwithstanding this actual notice, Wells Fargo took no action to terminate, suspend, or place on hold BG's recovery assignment against Plaintiff. The deployment of the LPR surveillance vehicle — Vermont registration KYD 502 — at Stewart's Shops, Arlington, Vermont, on May 28, 2026, less than 48 hours after Wells Fargo received actual notice of the Vermont State Police citation and BG's admitted trespass, constitutes direct, observable evidence that the recovery assignment was not suspended following the law enforcement intervention. The recovery operation continued. The tactics shifted from direct physical confrontation to passive electronic surveillance.

92e. Wells Fargo's decision — made with actual notice of its agents' trespass, actual notice of the Vermont State Police citation, actual notice of BG's written admissions of unauthorized entry, and actual notice of the criminal referral to the Bennington County State's Attorney — to continue the BG recovery assignment and permit the deployment of LPR surveillance equipment in Plaintiff's immediate residential neighborhood constitutes a deliberate

continuation of a known harmful course of conduct after specific, documented notice of that conduct's consequences. This is not negligence. This is bad faith directed personally at Plaintiff.

93. Plaintiff followed the LPR vehicle, Vermont registration KYD 502, at a safe and lawful distance after documenting it at Stewart's Shops on May 28, 2026, solely to establish its direction of travel for purposes of identifying the operator's Vermont domicile. The vehicle traveled north from Stewart's Shops, past the intersection of Route 313 — which connects directly to the State of New York — and continued into Sunderland, Vermont, in the direction of the Manchester/Sunderland residential area. Plaintiff discontinued following the vehicle at the Manchester/Sunderland area boundary to avoid any appearance of harassment or pursuit. The vehicle's direction of travel — past the New York connection and into Vermont — is consistent with a Vermont residential destination and supports Plaintiff's allegation that John Doe 4 is a resident and citizen of the State of Vermont, Bennington County, Manchester or Sunderland area

K. **Evidentiary Record & Regulatory Background**

94. The conduct described in this Complaint is documented through: BG marketing materials (**Exhibit** 1); Vermont Secretary of State Certificate of Absence of Record (**Exhibit** 2); FMCSA SAFER carrier snapshot (**Exhibit** 3); Federal prior litigation record (**Exhibit** 4); agricultural field tire impressions (**Exhibit** 5); Wells Fargo's CFPB Consent Order (**Exhibit** 6), 50-State AG Settlement (**Exhibit** 7), and DOJ/SCRA Consent Order (**Exhibit** 8); 'No Trespassing' sign photographs (**Exhibit** 9); Ring surveillance representative stills of video recordings (video of which will be provided at trial) — May 14 curtilage entry (**Exhibit** 10); white flatbed vehicle photograph — May 26 (**Exhibit** 12); still of audio/video of financial threats (video of which will be provided at trial) — May 26 (**Exhibit** 13); and audio/video of false authority claims (video of which will be provided at trial) — May 26.

## IV. CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF VERMONT CONSUMER PROTECTION ACT UNFAIR & DECEPTIVE ACTS IN COMMERCE
(9 V.S.A. §§ 2453(a), 2458, 2461(b))

**93.** Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

94. Operating an unregistered out-of-state entity in Vermont while marketing a Vermont operational presence; conducting remote telematics access without consent; and carrying out late-night residential surveillance as a commercial debt collection operation collectively constitute unfair and deceptive acts in commerce under 9 V.S.A. § 2453(a)..

95. Defendants were engaged in commercial asset recovery ("for hire") and debt collection for the direct financial benefit of Wells Fargo, constituting trade or commerce under 9 V.S.A. § 2451a.

96. Accessing vehicle telematics without consent, entering private property to photograph assets unrelated to any debt, conducting early-morning surveillance of a residential homestead, making false statements and representations if furtherance of collecting an alleged debt and operating outside Vermont's regulatory framework constitutes unconscionable conduct under 9 V.S.A. § 2453(a).

97. The conduct rises to the level of systematic, cross-border predatory practice that the Attorney General is authorized to address under 9 V.S.A. § 2458, supporting the public-interest dimension of this private action.

98. Actual damages for emotional distress, loss of quiet enjoyment, loss of personal security, and time and expense of documentation and response are not fully calculated at this time but reasonably believed to exceed $50,000.

99. Trebled exemplary damages under 9 V.S.A. § 2461(b) are warranted herein as are statutory and plus mandatory costs, fees and disbursements.

100. Such damages and injuries will continue until enjoined by this Court.

**COUNTS II & III**

**VIOLATIONS OF VERMONT CONSUMER PROTECTION ACT**
**FINANCIAL COERCION &**
**EXTORTIONARY THREAT OF POLICE INTERVENTION**
(9 V.S.A. § 2453(a))

**101.** Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

102. On May 26, 2026, John Doe 2 explicitly threatened the vehicle owner with 1) compounding financial losses for every subsequent visit to the property and 2) police intervention with the implication Plaintiff was engaged in criminal conduct ie extortion being the threat of criminal prosecution to effect civil disposition — both coercive threats that shock the conscious with the illegitimate design to coerce harass and intimidate asset surrender under duress and threat of arrest, captured on audio and video.

103. Threatening escalating financial penalties for non-surrender of collateral constitutes an unfair and coercive collection practice under 9 V.S.A. § 2453(a).

104. No contractual or legal basis for such threatened penalties exists in the underlying loan agreement or Vermont law.

105. Threatening police intervention and implied arrest i.e. extortion for non-surrender of collateral constitutes an unfair and coercive collection practice under 9 V.S.A. § 2453(a).

106. Emotional distress, financial panic, and defensive logistical expenses caused by the coercive threat are not fully calculated at this time but reasonably believed to exceed $20,000 per instance.

107. Trebled exemplary damages under 9 V.S.A. § 2461(b) are warranted herein as are statutory and plus mandatory costs, fees and disbursements.

108. Such damages and injuries will continue until enjoined by this Court.

**COUNT IV & V**

**VIOLATIONS OF VERMONT CONSUMER PROTECTION ACT**
**MISREPRESENTATION OF LEGAL AUTHORITY**
(9 V.S.A. § 2453(a))

109. Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

110. On May 26, 2026, John Doe 3 falsely represented to the residential occupant that they possessed authorization from the: 1) Vermont State Police and 2) "the bank" e.g. defendant Wells Fargo, to cross locked property boundaries.

103. The Vermont State Police confirmed no such authorization exists under Vermont law.

104. The false claims electronically captured.

105. Falsely claiming government or judicial sanction to enter posted private property constitutes a per se deceptive practice under 9 V.S.A. § 2453(a).

106. Emergency public resource deployment, household disruption, administrative and security costs are not fully calculated at this time but reasonably believed to exceed $25,000 per false representation.

108. Trebled exemplary damages under 9 V.S.A. § 2461(b) are warranted herein as are statutory and plus mandatory costs, fees and disbursements.

109. Such damages and injuries will continue until enjoined by this Court.

## COUNT VI

## VIOLATIONS OF VERMONT CONSUMER PROTECTION ACT
## PROHIBITED THIRD-PARTY DEBT DISCLOSURES
(9 V.S.A. § 2453(a))

**110.** Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

111. On May 26, 2026, and during their surveillance activity, Defendants' agents John Does 2 and 3 deliberately initiated conversations with neighbor Scott Pike – and other Arlington residents – adjacent to the property, openly disclosing details of the alleged consumer debt and active repossession operation without Plaintiff's consent and without judicial authorization.

112. Debt collectors are prohibited from communicating information regarding a consumer's debt to third parties without express consumer consent or direct judicial authorization.

113. The deliberate disclosure of Plaintiff's alleged default status to named and unnamed neighbors constitutes an unfair and deceptive collection practice under 9 V.S.A. § 2453(a).

114. Compromise of Plaintiff's local standing, credit privacy, and residential peace are not fully calculated at this time but reasonably believed to exceed $100,000.

115. Trebled exemplary damages under 9 V.S.A. § 2461(b) are warranted herein as are statutory and plus mandatory costs, fees and disbursements.

116. Such damages and injuries will continue until enjoined by this Court.

**COUNT VII**

**VIOLATIONS OF VERMONT CONSUMER PROTECTION ACT**
**HARASSING NOCTURNAL SURVEILLANCE**
(9 V.S.A. § 2453(a))

**117.** Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

118. On May 15, 2026, at approximately 12:30am, Defendants deployed a surveillance vehicle to conduct passes around Plaintiff's residence, driving across a neighbor's agricultural field in the process.

119. Midnight surveillance passes around a private residential homestead, conducted outside any reasonable operating hours without consent, constitutes conduct whose natural consequence is to harass and intimidate the household occupants.

**120.** Domestic disruption, procurement of security monitoring equipment, and emotional distress. are not fully calculated at this time but reasonably believed to exceed $10,000.

121. Trebled exemplary damages under 9 V.S.A. § 2461(b) are warranted herein as are statutory and plus mandatory costs, fees and disbursements.

122. Such damages and injuries will continue until enjoined by this Court.

**COUNT VIII**

**INVASION OF PRIVACY**
**ELECTRONIC INTRUSION (TELEMATICS)**
(Primary: Denton v. Chittenden Bank, 163 Vt. 62 (1994); Pion v. Bean, 176 Vt. 1 (2003))
(Alternative: 13 V.S.A. § 4601 *et seq.*)

**123.** Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

124. Defendants' remote access to Plaintiff's vehicle telematics, infotainment consoles, and geographic data streams without consent while the vehicle was stationary on Plaintiff's

private property constitutes intentional intrusion upon Plaintiff's seclusion under *Denton v. Chittenden Bank*, 163 Vt. 62 (1994). The access was ongoing, not a single isolated event. *Pion v. Bean*, 176 Vt. 1 (2003) (pattern of repeated intrusions supports claim). The console was witnessed as "Data Collection Active" when it had never been so before.

125. A reasonable person would find the covert remote activation of a vehicle's data systems while parked on private property to be highly offensive.

126. **Alternative Statutory Theory:** To the extent Defendants intercepted communication contents rather than mere location data, Plaintiff preserves claims under 13 V.S.A. § 4601 *et seq*. The viability of the statutory theory will be determined upon review of the vehicle's connected services agreement and loan documents in discovery.

127. Emotional distress, anxiety, loss of quiet enjoyment, loss of personal security, and time and expense of identification and response.are not fully calculated at this time but reasonably believed to exceed $20,000.

128. Compensatory and Punitive damages plus costs, fees and disbursements.

129. Such damages and injuries will continue until enjoined by this Court.

## COUNT IX

## INVASION OF PRIVACY
## PHYSICAL INTRUSION MAY 14, 2026

(*Denton v. Chittenden Bank*, 163 Vt. 62 (1994); *Pion v. Bean*, 176 Vt. 1 (2003);
*Shahi v. Madden*, 2008 VT 25)

**130.** Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

131. John Doe 1's deliberate advance fifty (50) yards into the protected curtilage of Plaintiff's homestead — photographing non-collateral personal property, mapping the residence, and further advancing twenty (20) yards south to surveil and photograph a neighboring private

parcel — constitutes intentional physical intrusion upon seclusion under Denton and Shahi. Although arising in the Fourth Amendment context, *Florida v. Jardines,* 569 U.S. 1 (2013), is persuasive authority that the curtilage is 'part of the home itself' and that any implied license extends only to the front door by the customary route.

132. A reasonable person would find an unknown commercial agent prowling the private fields of a residential homestead, photographing unrelated personal property, and then advancing to surveil a neighboring property to be highly offensive. *Denton*, 163 Vt. at 69.

133. Severe emotional distress, loss of quiet enjoyment, invasion of privacy, and costs of physical security countermeasures are not fully calculated at this time but reasonably believed to exceed $100,000.

134. Compensatory and punitive damages plus costs, fees and disbursements.

135. Such damages and injuries will continue until enjoined by this Court.

**COUNT X**

**INVASION OF PRIVACY**
**PHYSICAL & ELECTRONIC INTRUSION MAY 26, 2026**
(*Denton v. Chittenden Bank*, 163 Vt. 62 (1994); *Pion v. Bean*, 176 Vt. 1 (2003);
*Shahi v. Madden*, 2008 VT 25)
(Alternative Electronic: 13 V.S.A. § 4601 *et seq.*)

**136.** Plaintiff incorporates and reallages paragraphs 1-94 as is fully restated herein..

137. **Separate and Independent Intrusion:** The May 26, 2026 events constitute a distinct, independently actionable intrusion upon seclusion. John Doe 2 and 3 1) scaled two locked security gates on posted property, 2) advanced to the front door threshold with active electronic devices, and 3) conducted a second photographic inventory of the curtilage — causing Vermont State Police intervention on that same evening.

**138. Electronic Component:** The deployment of signal amplification hardware at the front door threshold to intercept RF rolling-code signals from key fobs inside the residence constitutes an additional electronic intrusion into the most private zone of the homestead. Upon information and belief, this electronic intrusion is actionable under 13 V.S.A. § 4601 *et seq.*, to be developed through expert analysis and discovery.

139. The vehicles key fob being in the home in a drawer in the kitchen the lights in and on the truck were seem to have cycles 2 independent times approximately 15 seconds apart while John Does 2 and 3 were trespassing and admitted being by the vehicle.

**140. Highly Offensive:** The combination of locked-gate bypass, police confrontation, false claims of authority, electronic signal interception at the front door, and systematic re-photographing of the curtilage constitutes conduct that is deeply offensive to any reasonable person.

141. Severe and compounded emotional distress, destruction of residential sense of security, loss of quiet enjoyment are not fully calculated at this time but reasonably believed to exceed $100,000, with an additional $1,000 per photograph taken.

142. Trebled exemplary damages under 9 V.S.A. § 2461(b) are warranted herein as are statutory and plus mandatory costs, fees and disbursements.

143. Such damages and injuries will continue until enjoined by this Court.

## COUNT XI

### TRESPASS TO LAND — MAY 14, 2026

### CURTILAGE ENTRY & NEIGHBORING PARCEL SURVEILLANCE

(Common Law; Restatement (Second) of Torts § 158; *Florida v. Jardines*, 569 U.S. 1 (2013)

**144.** Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

145 John Doe 1 intentionally entered Plaintiff's property on May 14 without consent, blocked the driveway, advanced into the private curtilage, and further advanced twenty (20) yards south to a position overlooking and affording a vantage of a neighboring private parcel. Each unauthorized entry and advance constitutes a separate act of trespass. Restatement (Second) of Torts § 158 (intentional entry onto another's land without privilege is actionable).

146. **Exceeding Implied License:** Although arising in the Fourth Amendment context, *Florida v. Jardines*, 569 U.S. 1, 8 (2013), is persuasive authority that the implied license to enter residential property extends only to approaching the front door by the customary route for a customary purpose. Advancing fifty (50) yards into private fields and logging roads and then a further twenty (20) yards to surveil an adjacent property is entirely outside that license.

147. Trespass is actionable without proof of actual injury. Plaintiff asserts damages for each unauthorized entry and advance in an amount not fully calculated but reasonably believed to be in excess of $10,000 per instance/photographs (the number to be determined at trial) ($10,000 x 2, with value apportioned for every photograph taken in the amount of $1,000).

148. The deliberate driveway blockade — obstructing ingress and egress with a running commercial vehicle — constitutes an independent private nuisance unreasonably interfering with Plaintiff's use and enjoyment of her property.

149. Physical intrusion upon and degradation of the curtilage, interference with private roadways and access, emotional distress, and nominal damages per entry, per individual .are not fully calculated at this time but reasonably believed to exceed $100,000.

150. Compensatory and punitive damages plus costs, fees and disbursements.

151. Such damages and injuries will continue until enjoined by this Court.

## COUNT XII

## TRESPASS TO LAND

(Common Law; Restatement (Second) of Torts § 158)

**152.** Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

153. During the interval between May 14 and May 26, 2026, an agent operating under Defendants' direction cut a locked steel gate chain securing Plaintiff's property entrance, causing physical destruction to the barrier and necessitating emergency replacement.

154. The deliberate physical destruction of a structural barrier on another's property constitutes trespass to land plus conversion of the barrier itself. Physical alteration of structural enclosures during an unauthorized entry establishes liability for property damages.

155. Cost of nominal emergency replacement chains, updated signage, and related security restoration costs. damages for the trespass entry itself. are not fully calculated at this time but reasonably believed to exceed $5,000.

156. Punitive damages are warranted herein.

157. Such damages and injuries will continue until enjoined by this Court.

## COUNT XIII & XIV

## TRESPASSES TO LAND

## MAY 26, 2026 DOUBLE-GATE BREACH

(Common Law; 13 V.S.A. § 3705; Restatement (Second) of Torts § 158)

**158.** Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

159. **Intentional Entry Through Posted Barriers:** On May 26, 2026, John Doe 2 and John Doe 3 intentionally and knowingly ignored two separate, closed, locked security gates, each posted with legally compliant dated 'No Trespassing' signs.

160. The entry was in express defiance of posted boundary-exclusion language.

161. John Doe 2 and John Doe 3 admitted this trespass to responding Vermont State Police Troopers on scene.

162. **Criminal Trespass Parallel:** The knowing entry onto posted land through locked barriers, over explicit objection, falls within 13 V.S.A. § 3705. The criminal referral is relevant to the civil liability and punitive damages analysis.

163. **Admissions:** BG's admissions to law enforcement explicitly memorialized the unauthorized entry.

164. This was a breach of the peace.

165. Physical trespass damages are not fully calculated at this time but reasonably believed to exceed $20,000 per 2 person breach.

166 Punitive damages are warranted herein.

167. Such damages and injuries will continue until enjoined by this Court.

## COUNT XV

## BREACHES OF THE PEACE MAY 14 & 26
## FORFEITURE OF UCC SELF-HELP PRIVILEGE

(9A V.S.A. § 9-609(b)(2))

168. Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

169. Under 9A V.S.A. § 9-609(b)(2), a secured party's self-help repossession privilege is strictly conditioned on proceeding without a breach of the peace.

170. A breach of the peace voids the self-help privilege entirely and renders the recovery attempt an unlawful conversion of the collateral.

171. ***Per Se* Breach:** The collective conduct of Defendants constitutes a *per se* breach of the peace: (1) bypassing two closed, locked, posted security gates; (2) ignoring posted and VT SP documented properly posted "No Trespassing" signs (3) falsely claiming law enforcement

authority to bypass posted boundaries; (4) falsely claiming "the bank" gave them authority to ignore the signs, chains and gates and approved their trespassing (5) making explicit financial threats to coerce surrender; (6) threatening criminal prosecution as against Plaintiff (7) receiving a formal Vermont State Police citation (VSP Incident/Citation No. 26B3002828); (8) on-scene admission of trespass to law enforcement and (9) photographing all of Plaintiff's outdoor assets and trespassing into the home's curtilage. Any one of these events would be sufficient to constitute a breach of the peace. Their combination is appalling and overwhelming.

172. By breaching the peace, Wells Fargo wholly forfeited its statutory self-help privilege under § 9-609.

173. All recovery maneuvers conducted after the breach are unlawful and constitute conversion of Plaintiff's property rights.

174. Conversion damages: 1) forfeiture of recovery privilege, 2) ongoing legal expenses to suppress further extrajudicial recovery attempts, and 3) emotional distress, are not fully calculated at this time but reasonably believed to exceed $50,000.

175. Punitive damages are warranted herein.

176. Such damages and injuries will continue until enjoined by this Court.

**COUNT XVI**

**PRIVATE NUISANCE**
**DRIVEWAY & ACCESS OBSTRUCTION**
(Vermont Common Law)

177. Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

178. On multiple occasions, May 14, Defendants positioned heavy commercial flatbed tow vehicles directly across Plaintiff's private driveway entrances, completely disrupting normal

residential ingress and egress, and loitered there while taking photographs and invading the home's curtilage.

179. A private nuisance is a substantial and unreasonable non-possessory interference with the use and enjoyment of land. Repeated deliberate obstruction of primary residential access routes with commercial machinery constitutes exactly this. The nuisance is incorporated within the trespass counts but pleaded independently to preserve all available remedies.

180. Direct loss of property utility, disruption of household mobility, and compounding interference with normal residential life.are not fully calculated at this time but reasonably believed to exceed $20,000 ($10,000 x 2)

181. Compensatory and punitive damages plus costs, fees and disbursements.

182. Such damages and injuries will continue until enjoined by this Court.

**COUNT XVII**

**WELLS FARGO'S NON-DELEGABLE DUTY & RESPONDEAT SUPERIOR**

(9A V.S.A. § 9-609; *Brueckner v. Norwich University*, 169 Vt. 118 (1999); Restatement (Second) of Torts § 422)

**183.** Plaintiff incorporates and realledged paragraphs 1-94 as is fully restated herein

**184.** **Respondeat Superior:** To the extent John Doe 1, John Doe 2, and John Doe 3 are characterized as employees of BG, Wells Fargo is vicariously liable for all tortious acts committed within the scope of their employment under *Brueckner v. Norwich University*, 169 Vt. 118 (1999). BG's field personnel operate under direct employment control and non-compete agreements, as confirmed by *BG v. Gifford*, No. EC2026-41709 (N.Y. Sup. Ct.).

**185.** **Non-Delegable Duty:** Independently of respondeat superior, Wells Fargo maintains an absolute, non-delegable duty under 9A V.S.A. § 9-609 to ensure its agents do not breach the peace, commit trespass, or violate state privacy laws during self-help recovery. Under

Restatement (Second) of Torts § 422, this non-delegable duty cannot be avoided by delegation to an independent contractor. Wells Fargo is directly liable regardless of BG's employment classification.

**190. Actual Knowledge:** Wells Fargo had actual and constructive knowledge that BG was unregistered in Vermont, unlicensed, a defendant in an active federal consumer credit action, and operating with a 60% vehicle out-of-service rate — all publicly verifiable before the assignment. Continuing to assign recovery work to BG despite this knowledge constitutes negligence.

191. Defendant BG is liable for the actions and omissions of its agents, employees, subcontractors and assigns.

192. Defendant Wells Fargo is liable for the actions and omissions of its agents, employees, subcontractors and assigns.

193. Accordingly the Court is prayed for a directed verdict upon establishment of underlying liability to hold Wells jointly and severably liable, legally and equitably, for the above complained of actions and omissions of its co-defendants as its duty is non delagable.

194. Such damages and injuries will continue until enjoined by this Court.

**COUNT XVIII**

**NEGLIGENT HIRING & RETENTION**

(Brueckner v. Norwich University, 169 Vt. 118 (1999);
*Haverly v. Kaytec, Inc.*, 169 Vt. 350 (1999))

**195.** Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

196. Wells Fargo owed Plaintiff a duty of reasonable care in the selection, hiring, retention, and oversight of third-party asset recovery vendors dispatched to interact with Vermont consumers.

197. The elements of negligent hiring in Vermont require proof that the employer held a supervisory role; breached its duty to control or supervise the agent; and that this breach caused injury. *Haverly v. Kaytec, Inc.*, 169 Vt. 350, 356-57 (1999)

198. Wells Fargo breached this duty by retaining BG despite: (a) BG's lack of a Vermont Certificate of Authority and registered agent; (b) the pending federal consumer credit action against BG — *Owens v. B.G. Lenders Service*, No. 1:26-cv-00033 (N.D.N.Y.) — filed five months before the assignment; (c) BG's vehicle out-of-service rate of 60%, nearly three times the national average; and (d) BG's field operations falling within the apparent scope of Vermont PI licensure requirements. All were publicly verifiable before the assignment.

199. **Prior Notice:** The CFPB Consent Order (**Exhibit** G1), the 50-State AG Settlement (**Exhibit** G2), and the DOJ/SCRA Consent Order (**Exhibit** G3) placed Wells Fargo on formal notice that its asset recovery vendor chain was systematically unmonitored and had produced widespread consumer harm. Retaining BG in the wake of those obligations demonstrates reckless disregard.

**200.** All physical trespass, electronic surveillance, and harassment harms described in this Complaint flow directly from Wells Fargo's negligent vendor selection.

201. Accordingly the Court is prayed to hold Wells jointly and severably liable for the above complained of actions and omissions of its co-defendants.

202. Award Plaintiff $100,000 as exemplary damages to enjoin and disinsentivise such and further willful neglect in Well's hiring and retention practices as related to the facts at Bar.

203. Such damages and injuries will continue until enjoined by this Court.

## COUNT XIX

## NEGLIGENT HIRING, TRAINING & SUPERVISION

(Brueckner v. Norwich University, 169 Vt. 118 (1999);
*Haverly v. Kaytec, Inc.*, 169 Vt. 350 (1999))

**204.** Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

205. **BG** owed Plaintiff a duty of reasonable care in the selection, hiring, retention, and oversight of third-party asset recovery agents to interact with Vermont consumers.

206. The elements of negligent hiring in Vermont require proof that the employer held a supervisory role; breached its duty to control or supervise the agent; and that this breach caused injury. *Haverly v. Kaytec, Inc.*, 169 Vt. 350, 356-57 (1999)

207. **BG** breached this duty by retaining agents and their clear lack of oversight and or training resulting in the trespasses and documented criminal conduct in the court of their employ.

**208.** All physical trespass, electronic surveillance, and harassment harms described in this Complaint flow directly from BG's negligent hiring, training and supervision.

209. Accordingly the Court is prayed to hold BG jointly and severably liable for the above complained of actions and omissions of its co-defendants.

210. Award Plaintiff $100,000 as exemplary damages to enjoin and disinsentivise such and further willful neglect in BG's hiring and retention practices as related to the facts at Bar.

211. Such damages and injuries will continue until enjoined by this Court.

## COUNT XX

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*Restatement (Second) of Torts § 46; Sheltra v. Smith, 136 Vt. 472 (1978); Coll v. Johnson, 161 Vt. 163 (1993)*

**212.** Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

**213.** Vermont recognizes the tort of intentional infliction of emotional distress. *Sheltra v. Smith*, 136 Vt. 472, 476 (1978) (Vermont Supreme Court first recognizing the tort, adopting Restatement (Second) of Torts § 46). The Vermont Supreme Court confirmed the tort's elements in *Coll v. Johnson*, 161 Vt. 163, 166 (1993).

214. A defendant is liable for intentional infliction of emotional distress where: (1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme and outrageous — so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; (3) the conduct caused Plaintiff emotional distress; and (4) the emotional distress was severe. Restatement (Second) of Torts § 46.

215. Liability is established whether the conduct is intentional or reckless — reckless disregard of the high probability of causing severe emotional distress is independently sufficient. Id. § 46(1).

216. The following conduct by Defendants, individually and collectively, satisfies the extreme and outrageous standard:

(a) Deliberate midnight surveillance passes at 12:30 AM around Plaintiff's occupied residential homestead on May 15, 2026, driving across a neighbor's agricultural field — conduct calculated to create fear and insecurity in a private home in the middle of the night;

(b) The explicit, coercive, on-video financial threat of $750 per-visit escalating penalties designed to economically intimidate and oppress Plaintiff into surrendering her vehicle, with no legal basis for such a threat under the loan agreement or Vermont law;

(c) The explicit, coercive, on-video police / criminal extortionary threat of police referral designed to legally intimidate and oppress Plaintiff into surrendering her vehicle, with no legal basis for such a threat exists

(d) The intentional deployment of electronic signal interception hardware at the threshold of Plaintiff's occupied private residence — a direct invasion of the safety of Plaintiff's home itself;

(e) The deliberate advance of agents carrying items concealed beneath their garments toward Plaintiff's vehicle under cover of darkness, creating an immediate and reasonable apprehension of physical danger and potential tracking device placement;

(f) The knowingly false instigation of a roadside sobriety investigation against Plaintiff — deliberately directing Vermont State Police to subject Plaintiff to field sobriety tests while she was reporting Defendants' own criminal trespass, for the purpose of humiliating, discrediting, and retaliating against Plaintiff personally; and

(g) The continued deployment of LPR electronic surveillance equipment in Plaintiff's immediate residential neighborhood less than 48 hours after Vermont State Police issued Incident/Citation No. 26B3002828, demonstrating deliberate indifference to law enforcement authority and to Plaintiff's residential safety.

**216.** The false sobriety investigation is independently sufficient to establish the extreme and outrageous element. Deliberately instigating a law enforcement investigation against a person you know to be sober — at the moment that person is reporting criminal trespass — is conduct that exceeds all bounds of decency, serves no legitimate purpose, and is designed to cause maximum personal humiliation and distress. Every administered Standardized Field Sobriety Test, as documented on Vermont State Police body camera footage, confirming that the instigation was knowingly false.

217. The combined twelve-day course of conduct — five physical incursions, electronic vehicle access, gate chain severance, midnight surveillance, electronic interception hardware at the front door, false sobriety investigation, continued LPR surveillance after a law enforcement citation — constitutes a sustained campaign of extreme and outrageous conduct directed personally and specifically at Plaintiff and her residential homestead. Defendants acted intentionally throughout. At minimum, Defendants acted with reckless disregard of the near-certainty of causing Plaintiff severe emotional distress.

218. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered severe and continuing emotional distress, including: anxiety and

hypervigilance in her own home; loss of the sense of personal safety and residential security she previously enjoyed; disruption of sleep and daily functioning; fear of further incursion; and the ongoing psychological harm of knowing her movements, property, and residential area continue to be electronically monitored by the parties responsible for the prior incursions. Plaintiff is entitled to compensatory damages for her emotional distress and to punitive damages given the malicious, reckless, and personally targeted nature of Defendants' conduct.

219. Award Plaintiff $100,000 in damages to enjoin and disinsentivise such and further conduct.

220. Such damages and injuries will continue until enjoined by this Court.

**COUNT XXI - in the alternative to Count XX**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

*Brueckner v. Norwich University, 169 Vt. 118 (1999); Langle v. Kurkul, 146 Vt. 513 (1986); Restatement (Second) of Torts § 313*

**221.** Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

221a. This count is pleaded in the alternative to the preceding Count XX for Intentional Infliction of Emotional Distress.

222. Vermont recognizes negligent infliction of emotional distress as a cause of action. *Brueckner v. Norwich University*, 169 Vt. 118, 125-26 (1999) (Vermont Supreme Court confirming elements of NIED and the circumstances under which recovery is permitted). *Langle v. Kurkul*, 146 Vt. 513, 516-17 (1986) (early Vermont recognition of emotional distress damages arising from negligent conduct).

223. The elements of negligent infliction of emotional distress in Vermont are: (1) Defendants owed Plaintiff a duty of care; (2) Defendants breached that duty through negligent conduct; (3) Plaintiff was placed within a zone of physical danger by Defendants' conduct or

Defendants' negligence caused direct impact to Plaintiff; (4) Plaintiff suffered severe emotional distress; and (5) Plaintiff's emotional distress was a foreseeable consequence of Defendants' negligent conduct. Restatement (Second) of Torts § 313.

224. Defendants owed Plaintiff a duty of care arising from multiple independent sources: Wells Fargo's non-delegable duty under 9A V.S.A. § 9-609(b)(2) to conduct asset recovery without breach of the peace; BG's duty as a commercial operator within Vermont to conduct its operations without causing foreseeable harm to Vermont property owners; and the general duty not to take actions that foreseeably endanger others on their own private property.

225. Defendants breached those duties through the conduct described throughout this Complaint. In the alternative to intentional or reckless conduct, Plaintiff alleges that Defendants negligently failed to supervise, train, and control their agents; negligently authorized continued deployment of field operations following the May 26, 2026 Vermont State Police citation; and negligently permitted the deployment of LPR surveillance equipment in Plaintiff's residential neighborhood following formal law enforcement intervention.

226. Plaintiff was placed within a zone of physical danger by Defendants' conduct. Agents advancing toward Plaintiff's vehicle under cover of darkness while carrying unidentified items concealed beneath their garments created an immediate, objectively reasonable apprehension of physical harm. The deployment of RF signal interception hardware at Plaintiff's occupied front door threshold placed Plaintiff's physical safety and residential security at direct risk. The continued electronic surveillance of Plaintiff's residential area following the law enforcement citation created an ongoing and foreseeable risk of further confrontation and physical breach.

227. As a direct and proximate result of Defendants' negligent conduct, Plaintiff has suffered severe emotional distress, loss of residential security, disruption of daily life and sleep, ongoing anxiety, and fear of future incursion. Plaintiff is entitled to compensatory damages for the emotional distress caused by Defendants' negligent conduct.

228. Award Plaintiff $100,000 as damages to enjoin and disinsentivise such conduct.

229. Such damages and injuries will continue until enjoined by this Court.

## COUNT XXII

## TRESPASS TO CHATTELS

*Restatement (Second) of Torts §§ 217-218; Vermont Common Law*

**230.** Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

231. Vermont recognizes the common law tort of trespass to chattels. Restatement (Second) of Torts § 217 (defining trespass to a chattel as intentional intermeddling with a chattel in possession of another). A defendant commits trespass to chattels when: (1) the defendant intentionally intermeddles with a chattel in the possession of another; (2) without authorization or privilege; and (3) the intermeddling causes actual harm to the chattel, dispossesses the owner, or deprives the owner of the use of the chattel for a substantial time. Restatement (Second) of Torts § 218. Unlike conversion, trespass to chattels does not require permanent deprivation — interference with possessory rights, however temporary, is sufficient where actual harm results.

232. Defendants John Doe 2 and John Doe 3 advanced to Plaintiff's front door threshold holding active electronic hardware units in each hand as documented on video. Upon information and belief, these devices comprised a synchronized signal amplifier and repeater designed to intercept, capture, and clone the Radio Frequency (RF) rolling-code signals emanating from Plaintiff's personal key fob controllers, which were located inside the residence. During this operation, Plaintiff's 2023 Ford F-350 — a chattel in Plaintiff's possession and lawful

custody — flashed its exterior lights and cycled its door locks no fewer than twice within approximately 15 seconds, consistent with remote electronic activation of the vehicle's locking system through a captured and replayed RF code

233. Defendants' intentional deployment of electronic signal interception hardware for the purpose of capturing Plaintiff's vehicle entry codes constitutes intentional intermeddling with Plaintiff's chattel — the vehicle itself and its electronic security systems. The unauthorized interception and cloning of the vehicle's RF security codes interferes directly with Plaintiff's exclusive possessory control over the vehicle by potentially enabling Defendants to unlock and access the vehicle without physical keys and without Plaintiff's knowledge or consent. This interference is without authorization and deprives Plaintiff of the exclusive control over the vehicle's security system that is a fundamental attribute of possession.

234. Additionally, BG's field agent's alleged severance of the locked steel gate chain securing Plaintiff's property constitutes a separate and independently actionable trespass to chattels — the intentional, physical destruction of Plaintiff's personal property by agents of BG without authorization.

235. The gate chain was Plaintiff's personal property.

238. Its deliberate severance constitutes both conversion and trespass to chattels, depriving Plaintiff of the use of that security infrastructure.

239. As a direct and proximate result of Defendants' trespass to chattels, Plaintiff has suffered: the cost of replacement gate chain and lock hardware; costs incurred in assessing and securing the vehicle's electronic security systems following the RF interception attempt; and the loss of confidence in the integrity of the vehicle's security system. Plaintiff is entitled to

compensatory damages and, given the deliberate and calculated nature of the electronic interception attempt, punitive damages.

240. Award Plaintiff $100,000 as damages to enjoin and disinsentivise such and further conduct.

241. Such damages and injuries will continue until enjoined by this Court.

## COUNT XXIII & XXIV

### VIOLATIONS OF VERMONT ELECTRONIC SURVEILLANCE STATUTE

*13 V.S.A. §§ 4601, 4602, 4609; Vermont Electronic Surveillance Act*

**242.** Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

242a. The claims in this count are asserted as an alternative statutory theory pending review of the connected vehicle services agreement in discovery and pending forensic electronic analysis of Plaintiff's vehicle. Plaintiff expressly reserves the right to amend this count upon completion of forensic analysis.

**243.** Vermont's Electronic Surveillance Act, codified at 13 V.S.A. §§ 4601 *et seq.*, prohibits the unauthorized interception of electronic communications and the use of electronic surveillance devices to monitor private communications without the consent of all parties. Section 4602 prohibits any person from intentionally intercepting or endeavoring to intercept any wire, electronic, or oral communication without the consent of all parties to such communication. Section 4609 provides a civil remedy: any person injured by a violation of the Act may bring a civil action and shall be entitled to recover the greater of actual damages or $100 per day of violation, plus punitive damages, attorney's fees, and costs.

244. Count One — Remote Telematics Access: On May 16, 2026, at approximately 11:47 AM, while Plaintiff's 2023 Ford F-350 was stationary on a private logging road within

Plaintiff's property, the vehicle's central infotainment console displayed 'Data Collection Active' — a prompt indicating that an external source was accessing the vehicle's telematics, infotainment, and location data systems without Plaintiff's contemporaneous knowledge or consent. Upon information and belief, Defendant Wells Fargo, or its agents through commercial recovery platforms including iRepo, Clearplan, or RDN, accessed the vehicle's electronic systems without authorization. This unauthorized remote access to the vehicle's electronic communications systems constitutes a violation of 13 V.S.A. § 4602. The vehicle's telematics system transmits electronic communications within the meaning of the Act.

**245.** Count Two — RF Key Fob Interception: On May 26, 2026, Defendants John Doe 2 and John Doe 3 deployed electronic signal amplification and interception hardware at Plaintiff's front door threshold, upon information and belief for the purpose of capturing RF rolling-code signals from Plaintiff's key fob controllers. The RF signals transmitted between Plaintiff's key fobs and the vehicle constitute electronic communications within the meaning of 13 V.S.A. § 4601. The intentional interception of those signals without Plaintiff's consent and without authorization constitutes a violation of 13 V.S.A. § 4602. The observable consequence — the vehicle's lights flashing and locks cycling twice within 15 seconds — is consistent with successful signal interception and replay

**246.** As a direct and proximate result of Defendants' violations of the Vermont Electronic Surveillance Act, Plaintiff is entitled to: actual damages arising from the unauthorized electronic access and interception; statutory damages of not less than $100 per day of violation pursuant to 13 V.S.A. § 4609; punitive damages; and mandatory attorney's fees and costs under § 4609.

247. Award Plaintiff $100,000 in damages to enjoin and disinsentivise such and further

conduct.

248. Such damages and injuries will continue until enjoined by this Court.

## COUNT XXV

### VIOLATION OF VERMONT CONSUMER PROTECTION ACT
### UNLICENSED PRIVATE INVESTIGATION BUSINESS IN VERMONT COMMERCE

*9 V.S.A. §§ 2453(a), 2461(b); 26 V.S.A. §§ 3151(3), 3153, 3172*

**249.** Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

**250.** Vermont's Private Investigator Licensing Act, 26 V.S.A. § 3151 *et seq.*, requires that any person who for compensation conducts activities constituting private investigation obtain a Vermont private investigator's license from the Office of Professional Regulation. Section 3151(3) defines 'private investigator' to include any person who, for consideration, investigates: the identity, movements, or whereabouts of any person; the location or recovery of lost or stolen property; or any matter relating to the recovery of property subject to a lien, security interest, or other claim. Section 3153 mandates that no person shall engage in the business of private investigation without a license. Section 3172 creates civil liability for unlicensed practice.

**251.** BG conducts operations that fall squarely within the statutory definition of private investigation. As documented in Exhibit 14 — BG's own marketing and advertising materials — BG advertises and performs: locating individuals through skip-tracing techniques; determining the movements and whereabouts of asset owners; using License Plate Recognition (LPR) technology to scan and track the locations of vehicles registered to lenders' customers; and conducting field surveillance of residential properties to document the presence, condition, and location of collateral assets. Each of these activities constitutes private investigation within the meaning of 26 V.S.A. § 3151(3).

252. Upon information and belief, BG does not hold a Vermont private investigator's license and is not registered as a private investigation firm with the Vermont Office of Professional Regulation. BG's active marketing of private investigatory services — including LPR surveillance, asset location, and residential field operations — to Vermont lenders including Wells Fargo, while holding no Vermont PI license and no Vermont Certificate of Authority, constitutes the conduct of an unlicensed private investigation business in Vermont commerce.

253. John Doe 4, the operator of the LPR surveillance vehicle (Vermont registration KYD 502) documented operating less than one-half mile from Plaintiff's residence on May 28, 2026, was individually engaged in private investigatory conduct — operating LPR equipment for commercial compensation to locate and track a specific individual's vehicle on behalf of a lender client — without demonstrated licensure as a Vermont private investigator.

254. The operation of an unlicensed private investigation business in Vermont commerce, and the solicitation and acceptance of compensation for unlicensed private investigatory services from Vermont lenders, constitutes an unfair and deceptive act in commerce within the meaning of 9 V.S.A. § 2453(a). The gap between BG's marketing of Vermont private investigatory services to institutional lenders and BG's actual unlicensed regulatory status in Vermont is independently actionable as a deceptive commercial practice. *Foti Fuels, Inc. v. Kurrle Corp.*, 2013 VT 111, ¶¶ 10, 13, 195 Vt. 524, 90 A.3d 885 (VCPA liberally construed to furnish all intended remedies)

255. Wells Fargo's knowing engagement of BG — an unregistered, unlicensed, foreign entity — to conduct private investigatory surveillance operations in Vermont, with actual or constructive knowledge of BG's unlicensed status (Exhibits — Vermont SOS absence of registration, FMCSA SAFER data), renders Wells Fargo a co-participant in the deceptive

commercial practice and independently liable under the VCPA and under its non-delegable duty as the engaging principal.

256. As a direct and proximate result of Defendants' violations, Plaintiff is entitled to: actual damages; trebled exemplary damages pursuant to the mandatory trebling provision of 9 V.S.A. § 2461(b); and mandatory attorney's fees and costs under § 2461(b).

257. Award Plaintiff $100,000 as damages to enjoin and disinsentivise such and further willful conduct.

258. Such damages and injuries will continue until enjoined by this Court.

## COUNT XXVI

## CIVIL CONSPIRACY

*Gilman v. Maine Mutual Fire Insurance Co., 2003 VT 55, 175 Vt. 554; Vermont Common Law*

**259.** Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

260. Vermont recognizes civil conspiracy as an independent cause of action. *Gilman v. Maine Mutual Fire Insurance Co.*, 2003 VT 55, ¶ 32, 175 Vt. 554. The elements of civil conspiracy in Vermont are:

> (1) a combination of two or more persons;
>
> (2) to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means;
>
> (3) an overt act or acts done in furtherance of the conspiracy; and (4) damages to Plaintiff approximately caused by the conspiracy.

261. Civil conspiracy is not merely a duplicative theory — it creates joint and several liability among all co-conspirators for the acts of each conspirator committed in furtherance of the agreed unlawful purpose, regardless of which individual physically executed a given act. A corporation and its agents are capable of conspiracy with one another and with third parties

where the combination advances a purpose beyond the lawful scope of any single party's independent authority.

**262.** The Conspiracy: Defendants Wells Fargo, B.G. John Doe 1-4 combined and acted in concert to accomplish the following lawful and subsequently unlawful purposes by unlawful means: (a) to conduct extrajudicial asset recovery against Plaintiff through repeated trespass, electronic surveillance, and coercive conduct in violation of Vermont law, including 9A V.S.A. § 9-609, 13 V.S.A. § 3705, and 9 V.S.A. § 2453; and (b) to locate, track, and intercept Plaintiff's vehicle through electronic means including unlicensed LPR surveillance and unauthorized telematics access, in violation of Vermont's Electronic Surveillance Act and private investigator licensing requirements.

**263.** The combination is established by the following evidence of coordinated conduct: Wells Fargo assigned the account to BG through the RDN shared recovery platform; Wells Fargo and BG shared real-time access to field activity data through that platform, meaning Wells Fargo had live visibility into BG's field operations; BG dispatched John Doe 1 on May 14, 2026, dispatched a surveillance vehicle on May 15, coordinated remote telematics access on May 16 through the shared platform, directed the gate chain severance, dispatched John Doe 2 and John Doe 3 on May 26, and deployed John Doe 4 and the LPR surveillance vehicle on May 28; each field operation was conducted pursuant to the Wells Fargo assignment authorization; Wells Fargo received BG's field reports documenting each event, including the VSP citation; and notwithstanding actual notice of the VSP citation and BG's admitted trespass, Wells Fargo continued the recovery assignment, confirmed by the LPR deployment on May 28, 2026.

**264.** Overt Acts in Furtherance of the Conspiracy: Each of the following constitutes an overt act committed in furtherance of the conspiracy: (a) John Doe 1's May 14 curtilage trespass

and photographic inventory; (b) the May 15 midnight surveillance; (c) the May 16 remote telematics access; (d) the gate chain severance; (e) John Doe 2 and John Doe 3's May 26 double-gate breach, financial threats, false authority claims, third-party debt disclosures, electronic signal interception attempt, and false sobriety investigation instigation as against Plaintiff's partner a member of Plaintiff's household; and (f) John Doe 4's May 28 LPR surveillance operation at Stewart's Shops, less than one-half mile from Plaintiff's residence, on the filing date of this action.

**265.** Each Defendant is jointly and severally liable for all damages suffered by Plaintiff as a result of the civil conspiracy, regardless of which specific acts each individual Defendant personally performed. Wells Fargo is liable for the trespass admitted by John Doe 2 and John Doe 3 on Trooper body camera. BG is liable for Wells Fargo's continued authorization of the surveillance operation after the VSP citation. John Doe 4 is liable as a co-conspirator for all prior acts committed in furtherance of the surveillance campaign.

**266.** As a direct and proximate result of the civil conspiracy, Plaintiff has suffered all damages described throughout this Complaint — including emotional distress, invasion of privacy, trespass to land, trespass to chattels, VCPA violations, and the ongoing threat of continued electronic surveillance and physical incursion. Plaintiff is entitled to compensatory damages, and to punitive damages given the deliberate, coordinated, multi-party nature of the conspiracy and its continuation after formal law enforcement intervention. The civil conspiracy count independently supports an award of punitive damages against all defendants jointly and severably.

267. Award Plaintiff $500,000 as exemplary punitive damages to enjoin and disinsentivise such and further willful conduct.

268. Such damages and injuries will continue until enjoined by this Court.

## COUNT XXVII

## ABUSE OF PROCESS

(Vermont Common Law; Restatement (Second) of Torts § 682)

269. Plaintiff incorporates and realleges paragraphs 1-94 as is fully restated herein.

270. Vermont recognizes abuse of process as an independent cause of action where: (1) legal process is used; (2) for an ulterior or improper purpose; (3) causing damage to the plaintiff. Restatement (Second) of Torts § 682. The tort is directed at the willful use of legal process for an end it was not designed to accomplish — including using law enforcement process as a tool of harassment, intimidation, or retaliation against an adverse party.

271. On May 26, 2026, Defendants' agents John Doe 2 and John Doe 3, who had been ordered off Plaintiff's property by responding Vermont State Police Troopers and had admitted their trespass on body camera, deliberately instigated a roadside sobriety investigation against Plaintiff's partner member of Plaintiff's household by those same Troopers. The sobriety investigation constitutes the use of legal process — specifically, the Vermont State Police's lawful authority to administer field sobriety tests. The instigation of that process served no legitimate law enforcement purpose. Plaintiff had called law enforcement to report Defendants' own criminal trespass. She and her partner were the complaining victim, not a suspect.

272. . The ulterior purpose is established by the circumstances: Defendants' agents had already admitted trespass. They were in the process of being removed from Plaintiff's property by law enforcement. The sobriety investigation was instigated at the precise moment of defendants' own maximum legal exposure — to deflect attention, to create a counter-narrative, and to retaliate against Plaintiff for exercising her right to call law enforcement. Plaintiffs

partner passed every administered SFST, confirming total sobriety on Trooper body camera footage. The instigation was without factual basis and knowingly so.

273. The damages are direct: Plaintiff ans members off her household were subjected to law enforcement scrutiny at her own property at the moment she was reporting a crime against her. She was subjected to physical sobriety tests under acute stress caused by Defendants' conduct. Her credibility as a complaining witness was directly attacked through the false instigation. And the emotional distress of being subjected to a sobriety investigation she did not merit — at the hands of law enforcement who arrived at her request — constitutes harm that no money damages can fully restore.

273. Compensatory damages in an amount to be proven at trial, plus punitive damages given the deliberate, retaliatory, and personally targeted nature of the abuse, are warranted. The corporate defendants are vicariously liable under respondeat superior for this conduct of their agents within the scope of the assigned recovery operation.

275. Award Plaintiff $50,000 as exemplary punitive damages to enjoin and disinsentivise such and further willful conduct.

276. Such damages and injuries will continue until enjoined by this Court.

**–remainder of page left blank–**

## V. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays this Court enter judgment against Defendants granting the following relief:

A. Temporary Restraints, Preliminary Injunction & Pre Judgment Attachment: Enjoining defendants, their employees and agents from: (i) further physical entry onto Plaintiff's property or curtilage; (ii) further electronic telematics access or RF signal interception targeting Plaintiff's vehicle or home; (iii) surveilling adjacent areas in connection with surveillance directed at Plaintiff and (iv) any further self-help recovery attempt of Plaintiff's vehicle:

B. Compensatory Damages: Award compensatory damages for: (i) emotional distress; (ii) loss of quiet enjoyment; (iii) invasion of privacy; (iv) physical intrusion upon and degradation of the property; (v) costs of key fob replacement and security restoration; (vi) loss of personal security, and (vii) time and expense incurred in identifying, documenting, and responding to defendants' misconduct; amounts to be proven at trial;

C. Exemplary Damages: pursuant to State codifications and common law;

D. Statutory Trebled Damages: Award trebled compensatory and exemplary damages pursuant to 9 V.S.A. § 2461(b) on each VCPA count in the aggregate, with mandatory attorney's fees, costs and disbursements;

E. Damages: Award of damages for each act of defendants' trespass to land and curtilage;

F Punitive Damages: Award punitive damages in an amount to be determined at trial on counts where defendants' conduct is found to be malicious, willful or in reckless disregard of Plaintiff's rights, *i.e.* invasion of privacy / cataloging Plaintiff's property;

G. Fees and Costs: Award reasonable attorney's fees, filing fees, expert witness costs and fees and investigation costs pursuant to 9 V.S.A. § 2461(b);

H. And such other and further relief as this Court deems just and equitable.

Dated: May 31, 2026
Bennington, Vermont

Samantha Grout, *pro se*
PO 213, 300 Seminary Ave
Manchester Vermont 05254
167 Hillside Road
Arlington, Vermont 05250
802-688-2475 / sgrout@gmail.com

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts so triable.

**VERIFICATION**

I declare under penalty of perjury pursuant to 4 V.S.A. § 27b that the above statement is true and accurate to the best of my knowledge and belief. I understand that if the above statement is false, I will be subject to the penalty of perjury under 13 V.S.A. § 2904(b) or to other sanctions in the discretion of the Court.

Signature: ______________________
Samantha Grout, Plaintiff, *Pro Se*